IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-327-D

| | |
|---|---|
| WILLIAM HYMON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant William Hymon seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits. After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-13], and granting Defendant's Motion for Judgment on the Pleadings [DE-15].

## STATEMENT OF THE CASE

On April 28, 2003, Claimant filed an application for disability benefits. Claimant asserted that he became disabled as of September 29, 1997, due to a rotator cuff tear, in his right shoulder, stress, mental problems, and depression. (TR. 63). Claimant's application was denied initially and upon reconsideration. (TR. 24-30). Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 17, 2005. After the hearing, the ALJ issued a decision denying Claimant's request

1

for disability benefits on October 6, 2005. The Appeals Council denied Claimant's request for review on June 21, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW AND SOCIAL SECURITY FRAMEWORK**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential

2

evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairments; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges in his brief that the ALJ erred by: (1) concluding that his impairments did not meet or equal a Listing, (2) finding claimant not totally credible, (3) crediting the state-agency doctors over examining doctors, and (4) failing to resolve alleged conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). Nonetheless, it is the opinion of this Court that the ALJ did not err.

**STATEMENT OF THE FACTS**

3

## I. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (TR. 15). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the following severe impairments: "impairment of the right shoulder, a major depressive disorder, a somatoform disorder, and a personality disorder." (TR. 15). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (TR. 15). Next, the ALJ determined Claimant's RFC by considering all of his subjective complaints and reviewing his medical records. (TR. 16). At step four, the ALJ found that Claimant could not return to his past relevant work as a custodian and floor installer. (TR. 19). However, at step five, the ALJ determined that Claimant could perform work as a surveillance system monitor, school crossing guard, cashier, or ticket taker. (TR. 20). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision. (TR. 21). The ALJ also concluded that Claimant's allegations were "not entirely credible." (TR. 17).

## II. Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing by teleconference. (TR. 230-49). He

4

was 52 years old at the time of the hearing and testified that he is a high school graduate. (TR. 230, 231). He said that he is married, and lives with his wife and grown daughter. (TR. 230). He testified that his previous work experience included installing floors and acting as a school custodian. (TR. 251-52). He stated that he has not worked since the onset of his disability on September 29, 1997. (TR. 232).

Claimant testified that he suffers from severe pain in his right arm, which is exacerbated by any type of lifting, pulling or stretching. (TR. 235). He stated that he cannot lift a gallon of milk from the refrigerator with his right arm, but can lift with his left. (TR. 235-36). Claimant testified that he can write and also pick up a coin or key with his right hand. (TR. 236). He stated he cannot lift his right arm past table height. (TR. 248). He stated he is also able to drive and sometimes goes to the store or post office, but does not do so often. (TR. 236). He stated that he sometimes goes grocery shopping with his wife. (TR. 236). Claimant stated that although he does not often help his wife unload the car after grocery shopping, he can lift some bags of groceries with his left arm. (TR. 237). He has not been walking much within the last six months, but was trying to walk on a regular basis before that time. (TR. 237). Claimant now can only walk to his mailbox before suffering from nervousness, headaches and fatigue. (TR. 238). Claimant stated that he currently does not exercise at all. (TR. 238).

Claimant also stated that he suffers from some psychological problems, such as depression. (TR. 240). He stated he feels down all the time, feels weak, and has low energy. (TR. 240). He also stated that he suffers from crying spells several times a week. (TR. 240). He has seen mental health professional on two occasions. (TR. 240). Claimant testified that when he takes part in an activity that he finds stressful, he gets

headaches, and feels pressure. Claimant could not articulate what kinds of things he finds stressful.

Claimant testified that on a typical day he gets up in the morning around 5:30 or 6:00 am. (TR. 234). He is able to dress himself. (TR. 234). His wife prepares breakfast and he eats. (TR. 234). Then Claimant goes outside to smoke a cigarette. (TR. 234). Afterward Claimant returns indoors and either watches television or just sits. (TR. 234). He testified that he does no chores, inside or out. (TR. 234-35, 245-46). He stated that he used to be active, but now does not leave the house to attend church or visit family or friends. (TR. 243-44). He stated that he visits his mother who is in a nursing home on occasion. (TR. 244).

Claimant testified that he was prescribed Loraxepam and Lexapro, medications for stress, nervousness, tension and depression, and that he has been taking them for a couple of months. (TR. 238, 241). He also stated that he told his doctors about his headaches, and they told him to take extra-strength Tylenol to alleviate the pain. (TR. 238-39). Claimant stated that the Tylenol sometimes helps his headaches. (TR. 239).

Claimant concluded that his main problem are the psychological issues, the depression, stress, and headaches. (TR. 248). He stated that if he did not have the pain in his head, he could probably work, even with his right arm impairment. (TR. 248).

### III. The Vocational Expert's Testimony at the Administrative Hearing

Sandra Wills-Brown testified as a VE at the administrative hearing. (TR. 252-58). The VE began by classifying Claimant's past work experience. (TR. 252). The ALJ then posed the following hypothetical:

> [C]onsider an individual of the Claimant's age, between the ages of

6

44, on his onset date, [and] his present age of 52. Further, consider that I find or assume that I find that he's confined to very limited use of his right, dominant arm, to the that he can't raise that arm much over waist height but he can use – he can grasp and grip with the right, dominant hand. He can – and with his left non-dominant arm and hand, he can lift, you know, 30 pounds. There would be no limitation in standing and walking. Further assume that, based upon the diagnosis of a somatoform pain disorder, he would be limited in the following domains and at the following levels: Remember locations and work-like procedures not significantly limited. Understand and remember very short and simple instructions not significantly limited. Understand, remember detailed instructions moderately limited. Carry out very short and simple instructions not significantly limited. Carry out detailed instructions moderately limited. Maintain attention and concentration for extended periods moderately limited. Perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances moderately limited. Sustain routine without special supervision not significantly limited. Work in coordination with or proximately to others without being distracted by them moderately limited. Make simple, work-related decisions not significantly limited.

. . . .

Complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace, without an interruption, an unreasonable number and length of rest periods moderately limited. Also moderately limited, the ability to interact appropriately with the general public. Ask simple questions or request assistance not significantly limited. Accept instructions and respond appropriately to criticism from supervisors moderately limited. Get along with coworkers or peers, without distracting them or exhibiting behavioral extremes, moderately limited. Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness not significantly limited. Respond appropriately to changes in the work setting, moderately limited. Be aware of normal hazards and take appropriate precautions not significantly limited and, finally, set realistic goals or make plans independently of others moderately limited. Assume further that I find that he's afflicted with pain of sufficient severity to be noticeable to him at all times but that, nevertheless, he could carry out and perform assigned duties within the parameters that I've just mentioned. With these limitations, can you identify any occupations that exist in the economy in significant numbers that this individual could perform?

7

(TR. 252-54). After that extensive hypothetical, the VE responded in the affirmative. (TR. 254-55). According to the VE, such an individual could perform the unskilled, sedentary job of surveillance system monitor, and the unskilled, light jobs of school crossing guard, flagger, and cashier or ticket taker. (TR. 254-56). The VE further testified that those jobs do not require intensive contact with the public. (TR. 256). Those jobs mentioned by the VE existed in significant numbers in both the local and national economies. ®. 255-56).

## DISCUSSION

### I. The ALJ Did Not Err by Finding that Claimant's Impairments did not Meet or Equal a Listing

Claimant first argues that the ALJ erred by concluding that his impairments did not meet or equal an impairment in the Listings at step three of the sequential analysis. Specifically, Claimant contends that he suffers from a somatoform disorder which qualifies as severe impairments either Listing 12.07. The ALJ concluded that Claimant did suffer from the severe impairment of a somatoform disorder, but found that it did not rise to the level of a Listing.

In order for a claimant to be found disabled due to a somatoform disorder, he must show that he meets the criteria under Listing 12.07.[1] Claimant bears the burden to show

---

[1] Listing 12.07 provides:

Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

1. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

    A. Medically documented by evidence of the following:

        1. A history of multiple physical symptoms of several years duration,

8

that his impairments are severe enough to equal a Listing. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting that the claimant bears the burden of proof with regard to the first four steps of the analysis necessary to determine disability, including whether the claimant's impairments are severe enough to meet or equal an impairment in the Listings). However, Claimant has failed to satisfy this burden.

Listing 12.07 requires that Claimant show that he has a persistent nonorganic

---

beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

    2. Persistent nonorganic disturbance of one of the following:

        a. Vision; or

        b. Speech; or

        c. Hearing; or

        d. Use of a limb; or

        e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

        f. Sensation (e.g. diminished or heightened)

    3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

    B. Resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or

        2. Marked difficulties in maintaining social functioning; or

        3. Marked difficulties in maintaining concentration, persistence, or pace; or

        4. Repeated episodes of decompensation, each of extended duration.

disturbance in the use of his arm <u>and</u> that the physical problem results in at least two of the following: marked restrictions in activities of daily living, social functioning or concentration or that he suffers from repeated episodes of decompensation.  Claimant, however, has failed to present evidence sufficient to show that he suffers from a severe impairment that qualifies under Listing 12.07.  The ALJ found that Claimant is only moderately limited in activities of daily living, social functioning, and maintaining concentration.  That conclusion is supported by Dr. Lori Brandon, a state agency psychologist, who reviewed Claimant's medical records.  (TR. 182).  In addition, that assessment was echoed by Dr. Verne Schmickley, who conducted an independent psychological evaluation and concluded that "in the future there should be no psychological contraindications for him being involved in return-to-work activities and gainful employment within his physical restrictions." (TR. 128). In addition, Dr. Robert Wyker performed a medical examination on Claimant, focusing on his right arm, and concluded that he could return to work but would not be able to lift objects above shoulder level.  (TR. 122).  Accordingly, Claimant's medical records do not support a finding that his somatoform disability is severe enough to meet or equal a Listing.

**II.    The ALJ Did Not Err by Finding Claimant to be Not Fully Credible**

The ALJ concluded that Claimant was not entirely credible.  In order to support his finding, the ALJ stated that "Claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, in type, although not necessarily in degree." (TR. 17).  Then, the ALJ reviewed the medical evidence that contradicted Claimant's allegations of complete disability.

Claimant argues that the ALJ provided no reasons for finding him not entirely credible.  The Social Security regulations require that an ALJ's decision "contain specific

10

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

However, here, the ALJ did provide specific reasons for his adverse credibility findings. He noted that an examining physician found that Claimant's rotator cuff strength showed some weakness but no sign of neurological deficit and concluded that Claimant could return to work as long as he did not have to lift his right arm above shoulder level. (TR. 17). The ALJ also noted that Dr. Schmickley, after assessing Claimant, concluded that although Claimant suffered from some psychological impairments, they should not prohibit him from returning to gainful employment. (TR. 17). The ALJ noted that Claimant saw a treating physician on June 13, 2003, January 5, 2004, and December 23, 2004, and reported that he felt well without adverse medical problems at all three appointments. (TR. 18-19).

The fact that Claimant can point to other evidence in the record that supports his claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the responsibility of this court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the

11

applicable regulations and law.

### III. The ALJ Did Not Err by Relying on the Opinions of the Non-Treating, Non-Examining State Agency Physicians

Claimant asserts that the ALJ relied solely on the opinions of the non-treating non-examining state agency physicians in determining that he retained an RFC that enabled him to perform light unskilled work. The ALJ stated that:

> the only specific comprehensive assessments of the claimant's work-related capacities of record are those by state agency medical sources who reviewed the claimant's medical records. The claimant's physical and mental work related capacities and limitations are taken therein from those assessments, with the addition of the claimant's limited ability to make use of his right arm taken from the claimant's testimony.
> As for the opinion evidence by other sources, the undersigned notes that those opinions are not supported by specific assessments of the claimant's mental and physical work-related capacities. Those opinions are thus not given the weight of the specific assessments by state agency medical sources.

(TR. 19). Specifically, Claimant argues that the ALJ should have relied on the opinion of Dr. Robert McCarthy, who examined Claimant on three occasions in order to assess Claimant for disability purposes but was not a treating physician. Dr. McCarthy opined that Claimant was not capable of working because of the diagnosed somatoform disorder.

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995). A treating source's opinion

12

does not automatically become the opinion of the ALJ.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Here, Dr. McCarthy, was an examining physician, but he was not an treating physician.  In fact, the physician who seems to have seen Claimant most regularly is Dr. J.E. Kenny, who wrote in his notes on three separate occasions that Claimant said he felt well without any adverse medication problems.  (TR. 18-19, 199, 208, 209).

Claimant is correct that "a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."  Martin v. Sec'y of Health, Educ. and Welfare, 492 F.2d 905, 908 (4th Cir. 1974) (emphasis added).  However, the testimony of a non-examining physician can be relied on if it is consistent with the medical evidence.  Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971).  Moreover, "if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand."  Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

Here, the ALJ reviewed the medical evidence and the opinions of the various doctors that have examined Claimant and have reviewed his medical record.  (TR. 17-19).  The ALJ noted that he gave more weight to the opinions of the state agency medical sources. However, the ALJ never stated that he refused to consider the other medical evidence.  To the contrary, it is clear from the recitation of the medical evidence in the ALJ's decision, that he considered the entire record.  As described above, various doctors concluded that Claimant was not suffering from severe impairments that would require a finding of disabled.  The ALJ need not have given controlling weight to Dr. McCarthy's statement that

13

Claimant could not work. The final responsibility for determining whether a person is disabled rests with the Commissioner. See 20 C.F.R. § 404.16247(e)(1) & (2). Accordingly, the ALJ properly considered the opinions of Claimant's treating, examining and reviewing physicians in determining his RFC.

### IV. The ALJ did not Fail to Resolve Alleged Conflicts Between the VE's Testimony and the DOT

Claimant alleges that the ALJ failed to resolve conflicts between the VE's testimony and the DOT because Claimant asserts that he does not have either the reasoning ability or the reaching ability required by the jobs that the VE identified. Specifically, Claimant argues that he is limited to performing only those jobs with a reasoning level of one and that require very limited reaching. According to the DOT, the job of surveillance system monitor requires a reasoning level of three; the job of school crossing guard requires a reasoning level of two and requires frequent reaching; the job of light exertion cashier requires a reasoning level of two and frequent reaching; and the job of ticket taker requires a reasoning level of two and frequent reaching.

Claimant is correct that under Social Security Ruling 00-4p, an ALJ must ask the VE whether the VE's testimony is inconsistent with the DOT and if it is, resolve those conflicts. Here, the ALJ asked the requisite questions and elicited the necessary responses from the VE.

First, with regard to the reasoning level. The ALJ posed a hypothetical to the VE in which he stated that Claimant was not significantly limited in understanding, remembering, and carrying out very short and simple instructions but moderately limited in remembering and carrying out detailed instructions. (TR. 253). The ALJ did not tell the VE that Claimant

14

was limited solely to performing tasks the involve short and simple instructions. A moderate limitation falls somewhere between having no limitation and having an extreme limitation. A moderate limitation in remembering and carrying out detailed instructions, however, does not mean that the Claimant is incapable of performing those tasks.

Claimant argues that jobs that require a reasoning level of two are too complex for him to perform because they require a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, appendix C. In addition, Claimant argues that jobs that require a reasoning level of three are also too complex because they require a claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, appendix C. However, as discussed above, the ALJ did not limit Claimant to performing only simple tasks. He stated that Claimant was only moderately limited in remembering and carrying out detailed instructions. Reasoning levels in the DOT range from one to six, so levels two and three are on the low end of the scale. Moreover, there is no indication that Claimant who is only moderately limited in remembering and performing detailed instructions would be unable to perform tasks involving "detailed but uninvolved instructions," which is the second lowest reasoning level provided for in the DOT.

Further, the VE classified all of the jobs that she stated Claimant could perform as unskilled. The jobs that the VE identified, surveillance system monitor, school crossing guard, cashier, and ticket taker all have a specific vocational preparation (SVP) level of 2. The SVP describes the amount of time that it takes a typical worker to learn the skills and

15

techniques necessary to perform the job. DOT, appendix C. Using the skill level definitions in the applicable Social Security Ruling, an SVP of 2 corresponds to unskilled work. 20 C.F.R. 404.1568 & 416.968. The Social Security regulations define unskilled jobs as requiring only basic communication. See SSR 96-9p at 8. "The ability to hear and understand simple oral instructions or to communicate simple information is sufficient." Id. Social Security regulations prohibits ALJs from relying on definitions that are inconsistent with the Social Security Administration's regulatory policies or definitions. SSR 00-4p. Therefore, an ALJ must credit Social Security Rulings above the DOT or other occupational information. Nonetheless, it is the court's opinion that no inconsistency exists between the DOT and the VE's testimony because the ALJ found that Claimant was only moderately limited in his ability to remember and carry out detailed instructions, which does not preclude the ability to perform unskilled work that require a reasoning level of 2 or 3.

In addition, Claimant argues that the jobs of school crossing guard, cashier, and ticket taker require frequent reaching. The VE specifically addressed Claimant's right arm limitations. The VE noted that the jobs of school crossing guard and ticket taker could be performed with Claimant's left arm, which he testified he was able to use to some degree. (TR. 255). In addition, the VE testified that a person could perform the job of cashier using one hand, with the second hand being used only as an assistive tool. (TR. 255). Accordingly, the VE took into account Claimant's right arm limitations and specifically noted that those jobs could accommodate Claimant's limited use of his right arm.

For the following reasons, it is the court's opinion that the ALJ did not fail to elicit testimony from the VE regarding conflicts in testimony because conflicts did not exist between the DOT and the VE. Therefore, the requirements under Social Security Ruling

16

00-4p were satisfied.

## **CONCLUSION**

Accordingly, because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that the claimant's motion for judgment on the pleadings be **DENIED**, the defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 12th day of July, 2007.

DAVID W. DANIEL
United States Magistrate Judge